F. W. ABRAHAM, Respondent, v. A. S. DURWARD, Appellant.

(180 N. W. 783.)

**Frauds, statute of — statute held not to render contract void, but merely voidable.**

1. Section 4, chapter 202, Laws 1917 (Statute of Frauds embodied in Uniform Sales Act), which provides that "a contract to sell or a sale of any goods . . . of the value of $500 or upwards shall not be enforceable by action unless the buyer shall accept part of the goods . . . so contracted to be sold or sold, and actually receive the same, . . . or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf," does not render a contract falling within the statute absolutely illegal or void, but renders it merely voidable at the election of one or either of the parties thereto.

**Frauds, statute of — failure to invoke statute in appropriate manner constitutes waiver of rights thereunder.**

2. A party sought to be charged upon a contract within such statute must invoke its protection in some appropriate manner, or he will be deemed to have waived his rights under it.

**Frauds, statute of — statute not available as defense where not especially pleaded and where complaint alleged contract generally.**

3. Where the complaint alleges the contract generally, without stating wheth-

er it was in writing or not; the Statute of Frauds is not available as a defense unless specially pleaded.

Opinion filed December 6, 1920.

Appeal from the District Court of Barnes County, *Englert*, J.

Defendant appeals from a judgment and from an order denying a new trial.

Affirmed.

*W. J. Lorsbough* and *Pollock & Pollock*, for appellant.

The telegram is neither a contract nor sufficient memorandum of one. Hastings v. Webber, 56 Am. Rep. 671.

"The stipulated price of such sale is an essential part of the contract, and must be stated in the note or memorandum thereof required by statute." Hanson v. March (Minn.) 40 N. W. 817; Watt v. Wisconsin Cranberry Co. 18 N. W. 898.

"A memorandum, when a contract is not in writing, must embrace all its substantial terms." Palmer v. Marquette & P. Rolling Mill Co. 32 Mich. 274.

There can be no acceptance while the purchaser has the right to object to either quality or quantity. 24 Ga. 215.

Sale void under the Statute of Frauds unless there was not only a delivery by the vendor, but an acceptance on the part of the purchaser. Simmons Hardware Co. v. Mullen (Minn.) 22 N. W. 294.

The law seems to be well settled that the objection that an alleged contract which is void under the Statute of Frauds may be availed of by general denial. Riif v. Riibe (Neb.) 94 N. W. 517; Livingston v. Smith, 14 How. 490; Allen v. Richard, 83 Mo. 55; Wiswell v. Tifft, 5 Kan. 263; Bliss, Code Pl. 2d ed. § 355.

*W. J. Courtney,* for respondent.

Where the Statute of Frauds was neither alleged in the answer nor mentioned at the trial, obviously it cannot be relied upon as a defense for the first time in this court. Groff v. Cook, 34 N. D. 126.

CHRISTIANSON, Ch. J. This action is brought to recover the purchase price of a carload of potatoes alleged to have been shipped by the plaintiff to one D. E. Hollinshead, of Thomson, Illinois, under an agreement with the defendant. In his complaint the plaintiff alleges:

"That the defendant on or about the 20th day of September, 1918, arranged with this plaintiff to ship to this defendant or to defendant's order, a carload of potatoes, and agreed to pay for them at the rate of 80 cents per bushel when the potatoes were loaded on the car at Pillsbury, North Dakota. That the agreement was made between the plaintiff and the defendant that the defendant was to pay 80 cents per bushel when the potatoes were loaded and ready to ship from Pillsbury, North Dakota and this price was to be paid for field run of potatoes, just as the potatoes were taken from the field.

"That on the 30th day of September, 1918, the defendant sent to his agent M. L. Peterson, at Pillsbury, North Dakota, the following telegram [omitting printed portions]: 'Thomson, Ill., 9th,–30 1918. To M. L. Peterson, Pillsbury Bank, Pillsbury, N. Dak. Have W. Abraham ship car of potatoes to D. E. Hollinshead, Thomson, Ill. immediately. Light (load) car to insure against frost. Draw on Sherman Bank, and answer collect. [Signed] A. S. Durward.'

"That the man Peterson notified this plaintiff of the order in the telegram, and asked the plaintiff if he would ship a car of potatoes immediately to the defendant's order, and at the same time showed the telegram to this plaintiff, and assured him that he would get his money within a very few days, and that he would draw on the Sherman Bank for the amount of the car as soon as it was loaded, at the agreed rate of 80 cents per bushel.

"That the plaintiff, relying on the agreement made, ordered a car, got one immediately, and shipped to D. E. Hollinshead, Thomson, Illinois, as directed by the telegram, and M. L. Peterson, the agent of the defendant who received the telegram, 900 bushels of potatoes from the field, as ordered by the defendant, and shipped them in a refrigerator car, and shipped them as directed by the defendant; that this plaintiff complied fully with all the orders of the defendant and shipped the potatoes, in conformity with defendant's orders."

The complaint further alleges that a sight draft was drawn upon a bank of Thomson, Illinois, as directed by the defendant, and payment thereof refused; and that defendant is justly indebted to the plaintiff in the sum of $720, the amount agreed to be paid for the potatoes, and that no part of the sum has been paid.

In his answer the defendant denied that he "on or about September

20, 1918, or at any other time, made any contract, arrangement, or bargain or agreement with the plaintiff or with any other person for the plaintiff, for the purchase of potatoes in car upon the track at Pillsbury or elsewhere."

He further denied that M. L. Peterson was his agent or in any manner authorized to represent him. He further denied, that he wrote, signed, or authorized to be sent or transmitted the telegram set forth in the complaint. He also denied, generally, the allegations of the complaint.

The case was tried to a jury and resulted in a verdict in favor of the plaintiff for the sum demanded in the complaint. The defendant moved for a new trial. The motion was denied, and defendant has appealed from the judgment and from the order denying a new trial.

The evidence adduced by the plaintiff tended to establish the allegations of his complaint. The plaintiff testified: "The last days of September Mr. Durward came over there and I was digging potatoes. He asked me if I wouldn't ship him—if I wouldn't sell him any potatoes, ship a carload of potatoes, and I says, 'No, I wouldn't ship any. I wouldn't have nothing to do with shipping,' and he says, Well, he would go up town and see Peterson [a banker], that he would do the business for him. He says he always did his business, and he went up town and he came back after a while and then . . . Mr. Durward said he had made arrangements and could give me 80 cents f. o. b. Pillsbury; that he could use a carload of potatoes, and he sent a telegram that he wanted them." Plaintiff further testified that, upon the delivery to him of the telegram set out in the complaint, he loaded a car containing over 900 bushels of potatoes; that Peterson (the banker) figured out the amount coming to the plaintiff, and prepared a sight draft and a bill of lading, which papers were left with Peterson for attention.

Peterson testified that he received the telegram set out in the complaint, and delivered it to the plaintiff; that, later, he received a long-distance telephone message from Illinois, inquiring whether plaintiff had shipped the potatoes or how soon he could ship them; that after plaintiff had loaded the car he brought the weight slips or tickets to Peterson; that he (Peterson) computed the number of bushels and the amount coming to the plaintiff for the potatoes, and prepared a bill of

lading for the car, and attached to it a sight draft for the amount coming to the plaintiff, and sent the papers to the bank at Thomson, Illinois, for collection, in accordance with the directions of the telegram; that payment of such draft was refused.

One Tillmony testified that in the fall of 1918 he was a tenant on one of defendant's farms; that one morning the defendant (who was staying with Tillmony) went over to plaintiff's place; that defendant said: "Well, I can buy potatoes from Mr. Abraham, and I will buy them when I can get ready on the other end for them." That when he came back defendant said: "I bought the potatoes, and when I trade them down at the other end, as soon as I get home and trade them then I send him word to ship them."

Hollinshead testified (in a deposition taken by the plaintiff October 31, 1919):

In the fall of 1918, I [Hollinshead] heard the defendant make some remarks in regard to potatoes and the price in Dakota where he had been, and I told him that I could use a car of potatoes of that kind at the price. He said he would give me the party's name and address, and I could get them, he giving the assurance as to the quality of the potatoes and the name of the man that owned them.

Q. What, if anything, was said with reference to using his [defendant's] name on the telegram?

A. Don't remember just exactly. *He told me, in order to make them understand that everything was all right, that I could send the telegram in his name* to insure getting the potatoes quickly.

Q. Then, as I understand it, you went to the telegraph office and sent the telegram we have introduced in evidence and signed his name to it?

A. Yes.

Hollinshead further testified that he called Peterson on the telephone and had a conversation with him over the long-distance telephone of the import testified to by Peterson, and that in such telephone conversation he (Hollinshead) stated that it was the defendant who was talking. He further testified that the telegram offered in evidence is like the one he wrote, with the exception that the word "light" was written, and should be "load."

In a subsequent deposition (taken by the defendant on December 29, 1919) Hollinshead attempts to qualify, to some degree, the testimony formerly given as to the authorization given by the defendant to sign his (defendant's) name to the telegram. He says: "Defendant did not tell me to order them in his name." He also says: "He [defendant] authorized me to refer to him, and, in order to shorten matters, I signed his name to the telegram mentioned above. . . . He said that he was well acquainted with the parties and I might refer to him in ordering them, in order to make them understand that everything was all right."

The defendant admitted that he had some conversation with the plaintiff about potatoes; but denied that the conversation was as related by the plaintiff. He also denied that he had the conversation with, or made the statements testified to by, Tillmony. He admitted that he had a conversation with Hollinshead, and that he told him that he could buy some potatoes from the plaintiff; also, that he told Hollinshead "he could telegraph to Peterson and Peterson would see Abraham;" and that Hollinshead said "he would refer them to me so they— so that he would get results, use my name as reference so he would get results." He denied that he authorized Hollinshead to order the potatoes in his (defendant's) name.

While defendant has specified many errors on this appeal, in his argument he has confined himself to the question whether plaintiff has established a valid contract. In his brief, defendant says:

"The position of the defendant and appellant is that the contract alleged in paragraph 3 and denied by the defendant has not been established by competent proof, and that even if so established, it is not an enforceable contract under chapter 202, Session Laws of 1917, and that:

"The telegram referred to and set out in paragraph 4 of the complaint, the sending or authorization of which is denied by the defendant, even if sent, did not constitute a contract or a sufficient memorandum of one, it being deficient in that it did not name the kind of grade of goods or the price to be paid therefor.

"That such telegram cannot be connected with prior oral conversations by parol evidence, for the purpose of supplying these deficiencies and making an enforceable contract.

"That the evidence does not show such a *delivery and acceptance* of the goods alleged to have been sold as would take the case out of the Statute of Frauds.

"That the defense of the Statute of Frauds is available in this case under the general and specific denials of the answer and the objections to the evidence made by the defendant during the course of the trial."

The entire argument of appellant is devoted to a discussion of the Statute of Frauds, the contention being that there was neither a written memorandum of the contract of sale, nor an acceptance and receipt of the goods by the buyer, sufficient to satisfy the requirements of the statute. It is further contended that the defendant properly invoked the Statute of Frauds as a defense. We shall consider the latter contention first, for if the defendant did not invoke the statute it will be unnecessary to determine whether by invoking it he might 'have defeated a recovery.

The statute involved is one of the provisions of the Uniform Sales Act. Laws 1917, § 4, chap. 202. So far as is pertinent to this controversy, it reads: "A contract to sell or a sale of any goods . . . of the value of $500 or upwards shall not be enforceable by action unless the buyer shall accept part of the goods . . . so contracted to be sold or sold, and actually receive the same . . . or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf." Sess. Laws 1917, chap. 202, § 4. It will be noted that this statute differs somewhat from the Statute of Frauds formerly in existence in this state. That statute (Comp. Laws 1913, § 5961) provided that "no sale of personal property or agreement to buy it . . . *is valid,*" unless the requirements of the statute are fulfilled. Whatever differences of opinion there may be among the authorities as to the effect of a statute worded like § 5961, supra, there seems to be little or no difference of opinion that a statute worded like chapter 202, Laws 1917, does not make a verbal contract falling within the statute illegal or void, but makes it merely voidable at the election of one or either of the parties thereto. See 29 Am. & Eng. Enc. Law, p. 814, and authorities cited in note 4. The defense of the Statute of Frauds is personal. It can be invoked only by the parties to the agreement or their representatives or privies. Strangers to the agreement have no right to invoke it for themselves,

or for the benefit of others. 29 Am. & Eng. Enc. Law p. 807. The Statute of Frauds (worded like the one under consideration) presupposes an existing lawful contract, and affects only the remedies upon it. Browne, Stat. Fr. 5th ed. § 136.

Browne (Browne, Stat. Fr. 5th ed. § 135) says: "As the Statute of Frauds affects only the remedy upon the contract, giving the party sought to be charged upon it a defense to an action for that purpose, if the requirements of the statute be not fulfilled, it is obvious that he may waive such protection; or rather that, except as he undertakes to avail himself of such protection, the contract is perfectly good against him." This principle has been recognized and enforced by this court. Erickson v. Wiper, 33 N. D. 193, 203, 204, 157 N. W. 592; Groff v. Cook, 34 N. D. 126, 157 N. W. 973.

The complaint in this case alleged the contract generally, without stating whether it was in writing or not. The complaint was sufficient, for it is now "settled by the great weight of authority that, where a contract within the Statute of Frauds is declared on, the court will presume that it was in writing, and no averment to that effect is necessary." 9 Enc. Pl. & Pr. p. 700; Browne, Stat. Fr. 5th ed. § 505. The answer was a general denial, coupled with specific denials of certain of the allegations of the complaint. In other words, the answer was, in effect, that the averments of the complaint were all untrue. Nothing was said in the answer to indicate that the defendant claimed that the contract was unenforceable because it failed to comply with the requirements of the Statute of Frauds. The first intimation plaintiff had that any such claim was, or would be, made, was after the trial had commenced. The defendant sought to raise the statute solely by objections to the introduction of evidence. He first made a general objection to the introduction of any evidence, and later made objections to the questions asked the different witnesses. No application was made for leave to amend the answer so as to plead the statute. While there are authorities to the contrary, we believe the better rule is that where the complaint alleges a contract generally, without stating whether or not it was in writing, a party who desires to avail himself of the Statute of Frauds (worded like chap. 202, Laws 1917) as a defense, must specially plead it; and unless, and until, he does so plead it, his objections to evidence, predicated on the Statute of Frauds, are unavail-

ing. If a party sought to be charged upon a contract voidable under the statute intends to rely upon that fact and avoid the contract, it is but just that he should so notify the adverse party, to the end that the litigation may end. If he does not rely upon the statute in his pleading, it is but just that he should be deemed to have waived his right to avoid the contract.

The Encyclopedia of Pleading and Practice (9 Enc. Pl. & Pr. pp. 705–707) says: "While there is no little conflict of opinion regarding the proper mode of taking advantage of the Statute of Frauds, it may be laid down as a sound and generally accepted rule, with certain exceptions in some jurisdictions, to be noticed hereafter, that, unless it appears otherwise that the contract declared on is obnoxious to the statute, the party seeking its protection must specially insist on it in his pleadings. The reason for this rule is obvious. A parol agreement is neither illegal nor void under the law. The statute of frauds requiring the contract to be in writing is simply a weapon of defense which the party entitled may or may not use for his protection. If he does not specially, by plea or answer, set it up and rely upon it as a defense, he cannot afterwards avail himself of its benefits." See also Sutherland, Code Pl. § 533, 20 Cyc. 314; Gottlieb v. Gins, 166 N. Y. Supp. 1041; Crane v. Powell, 139 N. Y. 379, 34 N. E. 911; Alaska Salmon Co. v. Standard Box Co. 158 Cal. 567, 112 Pac. 454; Groff v. Cook, 34 N. D. 126, 130, 157 N. W. 973; Erickson v. Wiper, 33 N. D. 193, 203, 157 N. W. 592.

The judgment and order appealed from must be affirmed. It is so ordered.


ROBINSON, BRONSON, and BIRDZELL, JJ., concur.


GRACE, J. (specially concurring). We think the evidence is sufficient to show that Peterson was the agent of the defendant and, as such, calculated the value of the potatoes, and included that amount in a sight draft and bill of lading, which were left with him for attention.

The foregoing, together with the telegram, were sufficient to take the case without the Statute of Frauds.

I do not agree with all the discussion contained in the majority opinion, with reference to the Statute of Frauds, but it is unnecessary

to state wherein I do not agree. It is sufficient to say that the purpose of the Statute of Frauds is to prevent fraud and perjury. The reason for the statute is based upon public policy. Its provisions largely relate to the validity of the contract.