[Civ. No. 3302. Fourth Dist. Nov. 17, 1944.]

DESSERT SEED COMPANY et al., Appellants, v. PHIL GARBUS et al., Respondents.

Harry W. Horton for Appellants.

A. C. Finney for Respondents.

GRIFFIN, J.—Plaintiffs brought this action to specifically enforce an oral contract involving the sale of onion seed by

defendants to plaintiffs or for damages for failure of defendants to perform.

Plaintiff Dessert Seed Company was doing business as such in Imperial County. Defendant company was operating a produce business in Los Angeles and did business in Imperial County and elsewhere. Defendants purchased a growing crop of onions on a 50-acre tract in Imperial County for $4,500 about April 23, 1942. They harvested about 10 acres of the crop and due to a fall of the market decided to raise and sell the rest for seed. According to plaintiff Dessert's testimony, about May 8, 1942, he visited the property, met defendant Garbus, asked him if the crop was for sale, and inquired about the price. Garbus fixed it at $3,400, payable $500 down and the balance later. Dessert left his card and told him if he would take less, to notify him. On May 14, 1942, Garbus came to plaintiffs' place of business, again offered the crop for $3,400, but plaintiff stated he would only pay $2,000. Thereafter plaintiffs found an outlet for onion seed through government agencies, and on May 19, 1942, Dessert called Garbus at Los Angeles by phone and asked him if he still wanted to sell the patch for $3,400, accept $500 down, and the balance on July 6th. Garbus replied that he did want to sell and would accept the amount suggested.

Plaintiff testified that after a second telephone call that same evening he asked Garbus if that was a "firm sale"; that he told Garbus he had sold some of the seed and asked if it was all right to go ahead and "sell on" it; that Garbus stated it was and to get the papers out to him in the morning. Garbus denied this.

That same day plaintiff Dessert wrote Garbus a letter, setting forth the terms of the telephone conversation, and asked him to sign an enclosed copy for confirmation. On the following day, May 20th, Dessert confirmed the sale to the government agency. He then made a check for $500, executed a note for $2,900, payable to defendant company on July 6, 1942, and sent them to defendants with a letter reading ". . . We herewith confirm purchase from you . . . Purchase Price . . . $3400.00 . . . inclosing our check for $500.00 along with our note for $2900.00 due July 6th. Kindly initial and return the extra copy of this letter for our files."

Dessert, without the knowledge of Garbus, then went to the property to look it over and found employees of defendants working there. (These men were working under a written

agreement with Garbus for a 25 per cent interest in the net proceeds from the sale of the crop.) He told them he had bought the onions and directed them to cease weeding them. He paid one of the employees $20 to irrigate one of the fields, paid a Mr. Cosulas, owner of the land under lease, $75 for an extension of the lease, paid Cosulas's agent $25 for some purpose, and secured a water card for the premises. Garbus contends that these expenditures were unnecessary because he had previously made proper arrangements for all of these items, under his purchase agreement. On May 23d defendant Garbus came to plaintiffs' office, laid the note, check and papers on the counter and told Dessert "that isn't a deal, my partner wouldn't go through with it . . . I didn't sign anything." Plaintiff Dessert told Garbus that he was "in a pretty bad spot" because he had sold the seed to the government and had to put up a bond guaranteeing delivery. After some further conversation, Garbus walked out. Dessert retained the note, check and letter and subsequently tore his signature off of the instruments. In a letter dated May 19th, but mailed seven days later, Dessert attempted to negotiate another and different contract for the purchase and sale of the *onion seed,* instead of the *onion crop.* The letter contained a new check for $3,400 and a carbon copy of the original letter in which a new offer of $3,400 for the *onion seed* was made and providing that onions left after harvesting would belong to defendants. Then follows this quotation: "If this letter states your understanding of our agreement, *as it now stands* (italics ours), please confirm by signing on the left below and return to us." "Confirmed by P. & G. Produce Company, By —————." On May 27th Garbus wired: ". . . Not interested your deal, let's call whole thing off." Garbus wrote Dessert and returned his check and confirmation letter, forwarded under the counteroffer, unsigned. In reply Dessert wired: "I have kept the terms of the contract you entered into with me and I am standing on it." There is evidence of several oral proposals made in reference to the sale of the onion seed between May 19th and June 4th. Garbus wired Dessert that his partner agreed on $5,000 and would accept $1,000 and a note due July 6th for $4,000. On the same day Dessert wired him ". . . We bought this from you on May 19 for $3400 . . . Will send you $1,000 and note for balance of $2400." On June 4th Dessert wired Garbus: ". . . As a matter of compromise only . . ." will pay $5,000,

$1,000 now and balance of $4,000 July 6th, "otherwise will stand on our contract." Defendants expended considerable money and employed many men to finish harvesting the seed crop. This action followed.

On application of plaintiffs, under their attachment, a receiver was appointed by the court to take charge of the onion seed. When judgment was entered for defendants the seed was disposed of pursuant to an order of the trial court and no longer remained a subject of the contract which plaintiffs seek to have specifically performed.

The trial court found that the defendants, during all the times mentioned in the complaint, were the owners of the onion crop described and of all the seed produced therefrom; that defendants, on May 19, 1942, entered into an oral agreement with plaintiffs for the sale of the onion crop for $3,400, $500 of which was, under the terms of the oral agreement, to have been paid forthwith, and the remaining balance of $2,900 was to have been paid on July 6, 1942, by executing and delivering a promissory note in that amount; that the oral agreement was subsequently reduced to writing and submitted to defendants for acceptance but that they repudiated the oral agreement and refused to make or sign any written contract for the sale of the onion crop or seed; that on May 23, 1942, defendants returned the check and note and notified plaintiffs that they were unwilling to comply with the terms of the oral agreement which they had made over the telephone; that in reliance upon the oral agreement, plaintiffs accepted certain orders from the government for the purchase of onion seed and made definite commitments to it to sell part of the onion seed, which defendants orally agreed to sell to plaintiffs; that since May 19th, plaintiffs were able and willing to comply with the terms of the oral agreement and that defendants were unwilling and refused to comply therewith.

The court found that there never was at any time any written agreement for the sale of the onion crop as required in section 1624a of the Civil Code; that defendants were the owners of the crop and seed and entitled to recover the same and that plaintiffs never did have any right, title or interest therein; that plaintiffs take nothing by their complaint and defendants recover from plaintiffs their costs. Judgment was entered accordingly.

It is a well-recognized principle of law in this state, in

an action for specific performance of a contract, that a plaintiff must not only allege, but also prove that the contract sought to be specifically enforced is not only just and reasonable, but that the consideration is adequate. (Civ. Code. § 3391.) The burden of proving this fact is on the person seeking the remedy. Many cases supporting this rule are to be found cited in 23 California Jurisprudence section 16, p. 438, et seq. and section 51, p. 492, et seq. (See, also, *Eichholtz* v. *Nicoll, ante,* p. 67 [151 P.2d 664].)

■ In the instant case plaintiff alleged in the complaint that the consideration to be paid (i.e. $3,400) was fair and reasonable and fairly represented the value of the onion seed at the time the contract was made. The trial court not only found these allegations to be untrue but also found that the reasonable market value at that time was $5,000. If for no other reason, the judgment refusing specific performance of the contract here involved must be sustained. ■ However, the mere fact that a contract is not specifically enforceable does not necessarily render it either void or voidable. ■ For a breach of a valid contract by the promisor, the promisee has his action for rescission or damages as the circumstances may justify or warrant. (*Norris* v. *Lilly,* 147 Cal. 754 [82 P. 425, 109 Am.St.Rep. 188].)

. Apparently, plaintiff concedes that the oral contract falls within the provisions of section 1624a of the Civil Code but contends that the facts as established and found by the court operate to bring it within the exceptions therein provided, i.e. (1) that the buyer gave something in earnest to bind the contract, or (2) in part payment, or (3) that plaintiff accepted part of the goods contracted to be sold or sold, and actually received the same.

Under former section 1624, subdivision 4 of the Civil Code, oral contracts such as here described were *invalid* unless coming within the exceptions therein specified. Under section 1624a, as constructed by Statutes of 1931, page 2261, such a contract to sell or a sale of goods of the value of $500 or over, "*Shall not be enforceable by action unless*" etc. This provision is taken from section 4, Statute of Frauds, Uniform Sales Act, vol. 1, U.L.A. p. 18. In interpreting the effect of that provision it has been held that such a statute of frauds does not make a verbal contract falling within the statute illegal or void, but makes it merely voidable at the election of either of the parties thereto. ■ The statute presupposes

an existing lawful contract and affects only the remedy to enforce it. (*Abraham* v. *Durward*, 46 N.D. 611 [180 N.W. 783].)

In *Manufacturers' Light & Heat Co.* v. *Lamp*, 269 Pa. 517 [112 A. 679], it was said that the statutes such as this section of the Uniform Sales Act "do not provide mere rules of evidence, but are limitations upon the judicial authority to afford remedies. . . If then, there has been a failure to properly comply with the legislative requirements, relief cannot be granted." ▮ Failure to comply with the provisions of this section, therefore, does not render the contract void, but merely unenforceable at the option of the person against whom it is sought to be enforced. (*Edwards Manufacturing Co.* v. *Bradford Co.*, 294 F. 176; *Maddaloni Olive Co., Inc.* v. *Aquino*, 191 App.Div. 51 [180 N.Y.S. 724].)

▮ As to the prayer for damages, the contract here involved is one which is required by the statute of frauds to be in writing and plaintiff is not entitled to recover unless the defendant is estopped to plead the statute or has brought himself within the exceptions therein noted. (*Albany Peanut Co.* v. *Euclid Candy Co.*, 30 Cal.App.2d 35, 38 [85 P.2d 471].) We will therefore consider the evidence and the finding of the court in connection with these claimed exceptions.

Plaintiff Dessert testified that defendant Garbus orally agreed to accept his check for "five hundred dollars down and the balance on July 6th." The trial court found that defendants orally agreed to sell the crop for $3,400, $500 "of which was, under the terms of said oral agreement, to have been paid forthwith, and the remaining balance of $2900 was to have been paid on July 6, 1942, through and in pursuance of, the making, executing and delivery of a promissory note" for $2,900. No mention was made as to any agreement to accept plaintiffs' check. Plaintiffs argue, therefore, that the mailing of the check and note was full performance on their part; that nothing remained to be done by them; that a sale had been made and plaintiffs gave and defendants actually received, something in part payment, or at least plaintiffs gave something in earnest to bind the contract; that as a matter of law, plaintiffs brought themselves within the exception; that defendant Garbus' act in returning the check and note was a violation of his agreement and even though the question of specific enforcement of the oral agreement is impossible under

the present conditions, plaintiffs are nevertheless entitled to damages for its breach.

In *Rabe* v. *Danaher*, 51 F.2d 777, it was held that a protested check of a buyer is not "part payment" within the statute of frauds, because it was not so received by the sellers and that accordingly nothing was given by the defendant in earnest or in part payment.

In *Central Trust Co.* v. *Cassidy*, 300 F. 386, it was held that the question as to whether or not a payment has been made is largely a question of the intention of the parties.

In 30 Cyc. p. 1180, regarding payment, it recites: "As used in its strict legal sense, there must be a delivery by the debtor or his representative of money or something accepted by the creditor as the equivalent thereof, with the intention on the part of the debtor to pay the debt in whole or in part, and accepted as payment by the creditor."

In the instant case, however, defendants apparently rejected the deal, not because of the payment by check, but for other reasons. Defendants returned the check and note as written, after which plaintiff Dessert tore his signature from each document and then immediately began bargaining with defendants about a new deal or transaction involving a better price to be paid by plaintiffs for the onion seed (not the onion crop). In support of the judgment and finding, though plaintiffs' evidence may indicate otherwise, we may well conclude that the trial court believed that if there had been an oral agreement to sell the onion crop there was a mutual abandonment or rescission of that transaction, or at least that defendants considered the contract for the purchase of the crop at an end and that plaintiffs acquiesced in defendants' refusal to comply with the oral agreement, which acquiescence was followed by an attempt to negotiate a new and different agreement. In support of this conclusion it is interesting to note that plaintiffs prepared a proposed finding that "in an effort to compromise the differences between the parties and not by way of waiver of said oral contract, subsequent negotiations were carried on . . . That in the carrying on of said subsequent negotiations the intent of the plaintiffs was to make an effort to compromise the matter and not to waive or abandon said oral contract." The trial court refused to sign such a finding but drew its own findings as indicated. Plaintiffs stood by, watched Garbus, who had actual possession of the

onion crop, harvest it, pay all expenses attendant thereon, pay the percentages due under the contract with the workmen, and then, when the seed was about to be taken, plaintiffs levied an attachment and placed a receiver in charge.

It is well settled that an abandonment of a contract may be implied from the acts of the parties and this may be accomplished by the repudiation of the contract by one of the parties and by the acquiescence of the other party in such repudiation. This doctrine is supported by many cases. (6 Cal. Jur. p. 382, § 230; *Mettler* v. *Vance,* 30 Cal.App. 499 [158 P. 1044]; *Carter* v. *Fox,* 11 Cal.App. 67 [103 P. 910].)

In support of the court's findings and judgment, the evidence would warrant a conclusion that there had been a mutual abandonment or rescission of the oral contract. (*Gibula* v. *Sause,* 173 Md. 87 [194 A. 826]; *Thompson* v. *Municipal Bond Co.,* 23 Cal.App.2d 402 [73 P.2d 274].)

In view of this conclusion, it becomes unnecessary to determine whether, as a matter of law, a part payment had been made on the oral agreement or something in earnest to bind the contract had been given. The conclusion that there had been a mutual abandonment or rescission of that contract would dispose of the question whether there had been an acceptance by the buyer of a part of the goods contracted to be sold or sold, within the meaning of section 1973a of the Code of Civil Procedure, and the claimed purchaser had actually received the same. The evidence on this point, nevertheless, was sufficient to support the conclusion that there never had been a bona fide delivery and an actual acceptance of the onion crop. (*Rabe* v. *Danaher, supra.*)

It is true, as contended by plaintiffs, that the facts of a particular case may give rise to an equitable estoppel against the parties seeking to set up the statute of frauds and foreclose such parties from relying thereon. (*Wilson* v. *Bailey,* 8 Cal.2d 416 [65 P.2d 770]; *Grant* v. *Long,* 33 Cal.App.2d 725 [92 P.2d 940].)

The contention that there arose an equitable estoppel whereby the defendants were precluded from raising the statute of frauds as a bar to the action is equally untenable in view of the conclusion reached, because the court found that the consideration agreed upon in the oral agreement was not only unfair and unreasonable but did not fairly represent the value of the onion seed at the time the contract was made. In

addition thereto, and in support of the judgment, we concluded that there had been a subsequent abandonment or rescission of the oral contract. Under the findings in the present action this court could not direct the lower court to apply the estoppel suggested. ■ Whenever a party seeks to set judicial machinery in motion and obtain some equitable remedy, and violates conscience or good faith or other equitable principle in connection therewith, the court will refuse to intervene in his behalf and award him any remedy. (*Allstead* v. *Laumeister*, 16 Cal.App. 59 [116 P. 296].) ■ The doctrine of equitable estoppel should not be enforced when it would compel the performance of a contract found to be abandoned or rescinded or to be unfair and unreasonable as to the consideration involved.

Plaintiffs, on May 13, 1943, made application to this court for leave to produce additional evidence of facts occurring subsequent to the entry of judgment. This application bore upon the question of plaintiffs' contract with the government for the sale of onion seed and the higher price he was compelled to pay for other seed to fill the contract, which loss he claimed was due to the breach of the oral contract between the plaintiffs and defendants. We heretofore denied that application. Plaintiffs renewed such application in their reply brief. Under the conclusions above reached, we have not changed our view as to the materiality of such evidence or the necessity of granting such an application.

The application is denied. Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 15, 1945.