[Civ. No. 10626.   First Appellate District, Division One.—December 20, 1938.]

ALBANY PEANUT COMPANY (a Corporation), Respondent, v. THE EUCLID CANDY COMPANY OF CALIFORNIA, INC. (a Corporation), Appellant.

Philip S. Ehrlich, Albert A. Axelrod and Julian R. Bauer for Appellant.

Smith, Southwell & Smith and J. D. Lear for Respondent.

JONES, J., *pro tem.*—This action went to trial on June 19, 1935, upon the second amended complaint of the plaintiff which contained six separate causes of action. The first two of these various causes of action were directed to the appellant here, and the remaining counts to other defendants. Upon the conclusion of plaintiff's case a nonsuit was granted as to all the causes of action except the first, and as to this cause of action the motion for a nonsuit was denied. The respondent at that time made a motion to amend its complaint to conform to the proof, which said motion was granted.

The first cause of action is for the reasonable value of goods sold and delivered. The amendment to its complaint filed by the plaintiff sets up what is denominated a seventh and separate cause of action, and alleges an oral contract to buy, a breach thereof, a resulting damage in the sum of $3,000, and an estoppel to rely on the defense that the contract was not in writing. The answer to this amended pleading denies all the material allegations thereof, and sets up the statute of frauds as a special defense. The action came up again for hearing on November 27, 1936, at which time stipulations were made that certain persons would testify to particular facts if called as witnesses, after which the plaintiff again rested its case and another motion for a nonsuit was made. This motion was likewise denied.

The findings made by the trial court follow generally the allegations of the complaint as amended and judgment was

entered for the plaintiff in the sum of $3,000, together with interest and costs. From this judgment the appeal has been taken.

The respondent is a Virginia corporation engaged in the business of cleaning and shelling peanuts at Albany, Georgia. On June 3, 1931, it communicated with Latimer & Carmichael Co., brokers at Atlanta, Georgia, and requested them to offer to the trade four carloads of No. 1 Spanish shelled peanuts at a price of 5½ cents per pound f. o. b. Albany, Georgia, two cars to be delivered during the last half of October, and two cars the last half of November. Latimer & Carmichael Co. in turn telegraphed Parrott & Co., brokers in San Francisco, to make a similar offer, subject to confirmation, of the same amount of peanuts at the same price for the same delivery. C. J. Nouges, a representative of Parrott & Co., called on J. W. McKey, the general manager of the appellant and made him acquainted with the offer. McKey stated at that time that he would take the four carloads of peanuts provided that a thirty cent freight rate on them would be guaranteed. Latimer & Carmichael Co. refused to guarantee the freight rate and it does not appear that such a rate was ever guaranteed to the appellant by anyone. On June 15th, Parrott & Co. mailed to the appellant a proposed contract in writing which had been forwarded to them by Latimer & Carmichael Co. and which was signed by the Albany Peanut Company. The appellant was requested by Parrott & Co. to sign this contract and return it. On September 19th the appellant did return the proposed contract to Parrott & Co., but without its signature and with the statement that it was not satisfactory. At various times between June 15th and the 19th of September, Nouges, representing Parrott & Co., called on McKey, manager of The Euclid Candy Co., to get his signature to the contract, but was never able to do so. The following testimony of the witness Nouges details the negotiations between Parrott & Co. and the appellant from the time the proposed agreement was mailed to appellant until it was returned unsigned on the 19th of September:

"Mr. Lear. Q. You state in that letter, Mr. Nouges, that Mr. McKey promised you he would sign the contract. Did he make such a promise to you? A. Mr. McKey always said that he would sign the contracts,—'Leave them here on my desk and I will sign them later,' or 'Come in again and I will

sign them.' He always said he would sign them. Q. Approximately how many times did he tell you that? A. Well, that is difficult for me to state. I will say this: That we were always very anxious to get the buyers' and sellers' names on the dotted line, and we would follow those things up very closely, It was unfortunate that Mr. McKey was away so often when I contacted him for the contract, but whenever I saw him he always said he would sign them. Q. Up to this time did he ever state that he would not sign them—would not sign the contract? A. No.''

There is no other evidence pertaining to any promise on the part of the appellant to sign the written contract proposed by the respondent. Nothing was ever paid by the appellant on account of the alleged purchase price and it was stipulated upon the trial of the case that none of the peanuts were ever delivered by the respondent.

The contract here involved is one which is required by the statute of frauds to be in writing, and the respondent is not entitled to recover unless the appellant is estopped to plead the statute as a defense to the action.

The position taken by the respondent is that the appellant promised to put in writing a contract to purchase the four carloads of peanuts and that in reliance upon this promise it held the peanuts for the appellants until the communication of September 19th to Parrott & Co. returning the proposed contract unsigned, and that by so doing it suffered substantial damages. In this connection it is urged that since the appellant promised to put the contract in writing it is estopped to rely on the statute of frauds as a defense.

Before such an estoppel can arise the essential terms of the contract must be shown with reasonable certainty, and that representations were made by the opposite party that the invalidity of the contract under the statute would not be asserted, together with the fact that the party urging the estoppel has, pursuant to the terms of the contract, and induced by the representations and in reliance thereupon, changed his position to his detriment, the intention to make such change being known at the time to the one making the representations. The circumstances must clearly indicate that it would be a fraud for the party offering the inducements to assert the invalidity of the contract under the statute, and unless the words and conduct of the party sought

to be held amount to an inducement to the other to waive a written contract in reliance upon the representation that the person promising will not avail himself of the statute of frauds there is an absence of fraud which is requisite to an estoppel. (*Little* v. *Union Oil Co.,* 73 Cal. App. 612 [238 Pac. 1066] ; *Long* v. *Long,* 162 Cal. 427 [122 Pac. 1077] ; *Seymour* v. *Oelrichs,* 156 Cal. 782 [106 Pac. 88, 134 Am. St. Rep. 154] ; *Zellner* v. *Wassman,* 184 Cal. 80 [193 Pac. 84] ; *Standing* v. *Morosco,* 43 Cal. App. 244 [184 Pac. 954].)

A mere promise to execute a written contract, followed by refusal to do so, is not sufficient to create an estoppel, even though reliance is placed on such promise and damage is occasioned by such refusal. The acts and conduct of the promisor must so clearly indicate that he does not intend to avail himself of the statute that to permit him to do so would be to work a fraud upon the other party. (*Little* v. *Union Oil Co., supra.*) The appellant here took no positive action and held out no inducement to the respondent. It made no representation whatever other than that it would take the offered peanuts upon the condition that a thirty cent freight rate would be guaranteed, which, so far as the record shows, was never met. The testimony of Nouges shows that during the entire period of negotiations pressure was being exerted upon the appellant to execute the written contract. At no time was it asked to return the writing, nor was there a limit to the time within which it might execute the same. The respondent instituted the negotiations for the sale of its wares and in the hope that the sale would be consummated upon its terms, held them, and met a falling market to its loss. Any intentions which it may have had with reference to the purchase of peanuts to supply a prospective contract entered into with the appellant, or the holding of any peanuts which it had in stock for such a purpose, was never communicated to the appellant, and in so far as its knowledge goes the respondent may have intended to purchase the peanuts in the open market when and if appellant's signature was appended to the proposed contract. We are unable to perceive, and the respondent has failed to point out, wherein the taint of fraud is cast upon the appellant at any stage of the negotiations. Under such circumstances the appellant is not estopped to rely upon the statute of frauds as a defense.

Practically all of the grounds urged by the appellant for a reversal go to the point that it is entitled to rely upon the statute of frauds as a defense, and it being so held by this decision no extended discussion of these additional points is necessary.

The judgment is reversed with directions to the trial court to enter judgment for appellants.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 19, 1939, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 16, 1939.