Troy SEALE, Plaintiff-Appellee, Cross-Appellant,

v.

CITIZENS SAVINGS & LOAN ASSOCIATION, Defendant-Appellant, Cross-Appellee,

and

Erle A. Hanson, John G. Dillon, Theodore S. Lazarow, Robert A. Nunlist, Philip W. Christman and Robert B. Dell, Defendants, Cross-Appellees.

Nos. 85–3124, 85–3177.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 15, 1986.

Decided Nov. 26, 1986.

Rehearing and Rehearing En Banc Denied Jan. 15, 1987.

Harold G. Korbee (argued), Wood & Lamping, Cincinnati, Ohio, Roger J. Makley Coolidge, Wall, Womsley and Lombard Co., Dayton, Ohio, Molly Cochran (argued), for plaintiff-appellee, cross-appellant.

John J. Kulewicz (argued), Vorys, Sater, Seymour & Pease, Columbus, Ohio, David S. Cupps, for defendant-appellant, cross-appellee.

Before KENNEDY and MARTIN, Circuit Judges, and PECK, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Defendant-appellant/cross-appellee Citizens Savings & Loan Association ("Citizens") appeals from a jury verdict in favor of plaintiff-appellee/cross-appellant Troy Seale in this Ohio diversity action alleging fraud and breach of contract. Seale cross-appeals from the directed verdict in favor of the directors of Citizens and the District Court's refusal to instruct the jury on the awarding of attorneys' fees and punitive damages under Ohio law. We find that Ohio law does not recognize promissory estoppel in real estate transactions involving the statute of frauds and that there was no evidence of fraud on the part of defendant. Accordingly, we affirm the judgment of the District Court in part and reverse it in part.

In December, 1980, Seal purchased two buildings from Citizens in a sale-leaseback transaction. Citizens conducted 98% of its business at the branch offices located in these two buildings. The transaction apparently was initiated in response to a 1978 determination by the Division of Savings and Loan Associations of the Ohio Department of Commerce that the value of the real estate owned by Citizens exceeded the

permissible ratio of that value to its remaining assets.

The transaction was arranged by Robert Rogers, who was a director of Citizens and both Seale's personal and business accountant. Seale was the owner and president of a tool and die business, and owned two farms. Rogers approached Seale in late 1980 and presented him with a worksheet, which proposed that Seale purchase the two buildings for $900,000 and lease the buildings back to Citizens for five years. At the end of that term, Citizens would repurchase the buildings for $978,750.

The transaction is documented by an absolute deed of the property to Seale, a note, a mortgage, and a leaseback; there is no written repurchase agreement. Before signing the documents, Seale noted that the lease contained a clause for a five-year renewal at the option of Citizens, but that there was no provision for a repurchase. Seale testified that Roger "said that's just a form lease and not to worry about it and we got a buy-back separate agreement and that won't make any difference." Joint Appendix at 193. Seale testified that he asked Rogers about the repurchase agreement several times after the sale was completed as well; Rogers repeatedly assured Seale that it would be taken care of, but no document ever materialized.[1]

Rogers committed suicide in February, 1982. Shortly thereafter, Seale had several discussions with Citizens' directors and its legal counsel regarding the repurchase agreement. On June 30, 1982, Seale asserted the alleged repurchase obligation on the part of Citizens. Citizens denied that it had any obligation to repurchase the real estate.

Seale filed a complaint in the United States District Court for the Southern District of Ohio on March 24, 1983, seeking compensatory and punitive damages, equitable relief, and recovery of costs and attorneys' fees from Citizens and its directors for breach of contract and fraud.[2] At trial, the District Court directed a verdict for the individual directors. Seale voluntarily dismissed Sally M. Rogers, Executrix of the Estate of Robert E. Rogers.

In response to special interrogatories, the jury found that Rogers was the agent of Citizens, that he had made an oral agreement with Seale that Citizens would repurchase the buildings on January 1, 1986 for $978,750, that he did not intend to comply with the oral agreement to repurchase at the time it was made, that Seale would not have entered into the transaction absent the oral agreement, and that the transaction would be "grossly unfair" to Seale if the oral agreement were unenforceable. Joint Appendix at 42–43. The District Court held that Citizens was liable under a theory of promissory estoppel and gave specific performance of the agreement.

Citizens makes four arguments on appeal: (1) the weight of the evidence refutes that Rogers acted as Citizens' sole agent in the transaction; (2) Ohio law does not recognize promissory estoppel where the statute of frauds would bar enforcement of an alleged agreement; (3) Seale did not establish fraud by clear and convincing evidence; and (4) the District Court erred in ordering specific performance of a contractual provision about which there had been no meeting of the minds. Seale alleges two errors on cross-appeal: (1) the District Court erred in refusing to instruct the jury on the law applicable to recovery of attorneys' fees and punitive damages; and (2) the District Court erred in granting the directors' motions for a directed verdict.

## I.

We address first the issues raised by Citizens in its appeal.

---

1. There were reasons why each party would not want a written agreement for repurchase; the bank, because it would negate the required sale; Seale, because he would lose the tax advantage since he would not be at risk.

2. On December 23, 1982, Citizens effected a federally-assisted merger with a corporation now known as Mid Fed Savings Bank.

## A. Agency

One of the special interrogatories submitted to the jury asked whether Rogers acted as an agent for Seale, for Citizens, or for both of them. The jury found that Rogers acted as the agent of Citizens in the challenged transaction. Citizens argues that this finding is contrary to the overwhelming weight of the evidence, which it contends shows that Rogers acted solely for Seale in this transaction.

We have reviewed the record and conclude that there was sufficient evidence to support the jury's finding that Rogers acted as the sole agent of the Association in this transaction; accordingly, we find no error.

## B. Promissory Estoppel

Citizens argues that the District Court erred in applying the doctrine of promissory estoppel to this case. Citizens asserts that Ohio law does not recognize promissory estoppel in a case involving real estate and the statute of frauds.[3] Although the Ohio courts have never addressed this issue, we are persuaded that they would not apply the doctrine of promissory estoppel to statute of frauds cases involving real estate.

The agreement to repurchase the buildings was not in writing and required performance five years after the date of the agreement; thus, it did not satisfy the requirements of the statute of frauds. Nonetheless, the District Court charged the jury that:

> If you find that Citizens, at the time of closing, intended to carry out its aforesaid promise and then decided not to, and

that Mr. Seale, relying on such promise, changed his position to his detriment, and that it would be grossly unfair to Mr. Seale not to require Citizens to carry out its promise to repurchase, then Citizens is estopped to plead the defense of the statute of frauds.

Joint Appendix at 510. We do not believe Ohio would adopt this statement of the law.

The Ohio Supreme Court has never explicitly ruled on whether promissory estoppel can apply in instances where the statute of frauds would bar enforcement of an alleged oral agreement involving real estate. However, Ohio courts have long recognized the important function that the statute of frauds plays. *See, e.g., Newman v. Newman,* 103 Ohio St. 230, 245, 133 N.E. 70 (1921) ("The statute of frauds is founded in wisdom and has been justified by long experience.").

*Newman* was decided long before the term "promissory estoppel" was used. However, the Ohio Supreme Court there rejected plaintiff's claim which amounted to promissory estoppel. In doing so it indicated that it would have imposed a trust, or equitable estoppel, had plaintiff not been relying solely on a promise to give a mortgage in the future. In *Newman,* the father lent money to his son. The son used the money to purchase a piece of property, which, at the son's direction, was deeded directly to the son's wife. There was testimony that the son had stated that he would give his father a mortgage on the property. The son died and the father brought suit to establish a lien in his favor. There was no claim of a vendor's lien; only a parol agree-

---

**3.** Ohio has two statutes of frauds that pertain to real estate. Ohio Rev.Code Ann. § 1335.05 (Anderson 1979) provides in pertinent part:

> No action shall be brought whereby ... to charge a person ... upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them, or upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

Ohio Rev.Code Ann. § 1335.04 (Anderson 1979) is a more specific provision for certain types of interest in real estate:

> No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law.

ment to give a mortgage. The court acknowledged that:

It is also apparent that in some jurisdictions courts have followed a different rule from that which has been consistently followed in Ohio; and likewise in a number of cases it is shown that the court in the exercise of its equity powers has, because of the peculiar circumstances of the cases, felt called upon to impress a trust upon the property involved.

In this state there has been a very substantial adherence to the rule that upon parol contract for an interest in lands mere payment of the consideration does not take the case out of the statute of frauds and perjuries.

*Id.* at 240–41, 133 N.E. 70. The court refused equitable relief, stating that: "Such a holding would open the door to nullification of the statute of frauds under most any set of circumstances." *Id.* at 247, 133 N.E. 70.

■ A number of courts have permitted promissory estoppel in statute of frauds cases while an apparently equal number of courts have rejected it. The cases are collected in Annotation, *Promissory Estoppel as Basis for Avoidance of Statute of Frauds,* 56 A.L.R.3d 1037 (1974 & Supp. 1986). A number of the courts that apply the doctrine apply it not to the underlying transaction but to the ancillary promise to reduce the agreement to writing. See cases collected at *id.* § 5, p. 1057. Thus, in *21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement Sys.,* 432 F.2d 64 (5th Cir.) (applying Texas law), *cert. denied,* 401 U.S. 955, 91 S.Ct. 975, 28 L.Ed.2d 239 (1970), the court concluded that the defense of the statute of frauds is precluded only when there has been a misrepresentation that the statute's requirements have been complied with or a separate promise to make a memorandum. *Id.*

at 65. There must be a reliance on a further promise to reduce the first promise to writing. The court found no separate promise (and no misrepresentation) and so refused to apply the doctrine of promissory estoppel. *See also Alaska Airlines v. Stephenson,* 217 F.2d 295, 298 (9th Cir.1954); *Tiffany, Inc. v. W.M.K. Transit Mix, Inc.,* 16 Ariz.App. 415, 493 P.2d 1220 (1972); *Sinclair v. Sullivan Chevrolet Co.,* 45 Ill. App.2d 10, 195 N.E.2d 250, *aff'd,* 31 Ill.2d 507, 202 N.E.2d 516 (1964); *Albany Peanut Co. v. Euclid Candy Co. of California,* 30 Cal.App.2d 35, 85 P.2d 471 (1938). Plaintiff here has not proceeded on the theory of a separate promise.

The Iowa Supreme Court, holding that promissory estoppel is an exception to the statute of frauds, based its decision on the fact that that state's statute is procedural, that is, merely related to the manner in which the contract could be proven. *Johnson v. Pattison,* 185 N.W.2d 790 (Iowa 1971). Although Ohio's general statute of frauds is procedural, the statute relating solely to real estate is substantive. *See* footnote 3 *supra.*

Seale points out that Ohio has adopted the doctrine of promissory estoppel as set forth in the Restatement (Second) of Contracts § 90 (1981),[4] at least in some instances. *See Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 483 N.E.2d 150 (1985) (paragraph 3 of syllabus) (promissory estoppel applies to oral employment-at-will contracts); *Campbell v. Sirak,* 476 F.Supp. 21, 29 (S.D.Ohio 1979), *aff'd mem. sub nom. Campbell v. Board of Trustees,* 705 F.2d 451 (6th Cir.1982) and cases cited therein. In neither case was the statute of frauds an issue.

However, the Ohio Court of Appeals has held that the defense of the statute of frauds to an action to seek enforcement of an oral contract of employment for two

---

**4.** This section states:
(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

The remedy granted for breach may be limited as justice requires.
(2) A charitable subscription or a marriage settlement is binding under Subsection (1) without proof that the promise induced action or forbearance.

years may be overcome by the doctrine of promissory estoppel. *See Gathagan v. Firestone Tire & Rubber Co.*, 23 Ohio App.3d 16, 490 N.E.2d 923 (1985). The court noted that "the general purpose of the statute is to prevent and not to perpetuate fraud." *Id.* at 17, 490 N.E.2d 923. We do not find this Court of Appeals decision to be persuasive authority for the proposition that the Supreme Court of Ohio would allow promissory estoppel to defeat the statute of frauds in a real estate context, however. *Gathagan* involved a breach of an oral contract for employment for two years. We are not convinced that the Ohio courts would treat employment contracts and real estate transactions as co-extensive, since the latter implicate interests that are generally regarded as more deserving of protection.

Real estate transactions are usually formal undertakings involving significant sums of money. Because they have the potential to affect the actions and interests of third parties, these transactions need to be made public. The statute of frauds is thus necessary

> to ensure that transactions involving a transfer of realty interests are commemorated with sufficient solemnity. A signed writing provides greater assurance that the parties and the public can reliably know when such a transaction occurs. It supports the public policy favoring clarity in determining real estate interests and discourages indefinite or fraudulent claims about such interests.

*North Coast Cookies, Inc. v. Sweet Temptations, Inc.*, 16 Ohio App.3d 342, 348, 476 N.E.2d 388 (1984).

This case amply illustrates the important policy considerations underlying the statute of frauds in the real estate context. The absence of a writing makes the existence and the terms of the agreement to repurchase uncertain. Indeed, the statute of frauds was designed precisely to prevent litigation such as this, where the parties are entangled in a dispute over what was or was not promised, a situation made even more difficult here by the death of the one man who could have shed the most light on what the promise actually was. The conflicting evidence and arguments presented to this Court illustrate well the dangers posed by permitting oral real estate transactions. If a court allows parol evidence of an unwritten contract, it can never be certain that it is not perpetuating rather than preventing a fraud. Had the agreement been reduced to writing, however, there would be little opportunity for fraud or mistake to arise.

The Ohio Supreme Court has had no occasion to consider the ramifications of allowing the doctrine of promissory estoppel to override the statute of frauds in a real estate context. In the absence of a strong indication of its position on this issue, we decline to abrogate the clear and explicit intent of Ohio's two statutory provisions for writing requirements in real estate transactions. Rather, we find that the statute of frauds "is 'absolutely necessary to preserve the title to real property from the chances, the uncertainty, and the fraud attending the admission of parol evidence.' It should be enforced." *Newman*, 103 Ohio St. at 245, 133 N.E. 70 (quoting *Purcell v. Miner*, 71 U.S. (4 Wall.) 513, 517, 18 L.Ed. 435 (1866)).

Thus, we hold that the oral agreement to repurchase was not enforceable because it violated the statute of frauds. In light of this holding, we need not address Citizens' allegation that the District Court's instruction to the jury that it had to characterize the agreement as "fair" or "grossly unfair" was erroneous.

### C. Clear and Convincing Evidence of Fraud

Citizens argues that Seale failed to establish fraud by clear and convincing evidence. We agree, but not for the reasons asserted by Citizens.

The elements of fraud under Ohio law are as follows:

> (1) There must be an actual or implied representation of a matter of fact (2) which relates to the present or past, (3) which was material to the transactions and (4) which was false when made. (5)

The statement must be made with knowledge of its falsity, or with reckless disregard for whether it is true or not and (6) with the intent to mislead the other party into relying upon it. (7) The other party must be ignorant of the fact averred, causing (8) justifiable reliance and (9) injury.

*Dunn Appraisal Co. v. Honeywell Information Sys. Inc.*, 687 F.2d 877, 882 (6th Cir.1982) (citation omitted). Fraud must be established by clear and convincing evidence. *Kern v. Kern*, 100 Ohio App. 327, 330, 136 N.E.2d 675 (1955). Clear and convincing evidence in Ohio "requires that the proof '... produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985) (quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954) (paragraph 3 of the syllabus)).

 Here, under the instructions, the jury made several findings. It found that Rogers and Seale had entered into an oral agreement for the repurchase of the buildings, that Rogers was acting solely as Citizens' agent, and that "[w]hen the oral agreement was made, Robert Rogers intended not to comply with it." Joint Appendix at 43. The fraud which was alleged and which the jury found was Rogers' representation that the property would be repurchased and his present intent that it not be repurchased while representing that it would be. However, the jury's finding that Rogers did not intend to comply with the oral agreement to repurchase is irrelevant. It is directed toward the wrong actor. *Citizens'* intent at the time of the transaction, not Rogers' intent, controls.

The agreement required Citizens to repurchase the buildings in 1986. Thus, the called-for performance was not to be undertaken by Rogers, but rather by Citizens. Rogers' intent in 1980 that the repurchase not occur in 1986 had no bearing on whether that repurchase would in fact occur. Citizens was free to comply with the oral agreement despite Rogers' bad intent, and Rogers was powerless to prevent it from doing so. Thus, Rogers' intent that the repurchase not occur despite his representation that it would did not give rise to fraud unless Rogers had the power to control what Citizens would do.

The true issue is whether Citizens intended *at the time of the transaction* that no repurchase occur. This question was never put to the jury. If Citizens intended to repurchase the buildings at the time of the transaction, then Rogers did not falsely represent Citizens' intent. If there were no misrepresentations, Citizens' actions at the time of the oral agreement were not fraudulent. Citizens' later repudiation of an agreement it intended to perform at the time the promise was made would not be actionable. The promise to repurchase would not be enforceable because it would violate the statute of frauds. The "mere breach of a promise ... which the law does not regard as binding can not amount to fraud, nor can it render enforceable a promise which was not binding when made." *Prevas v. Gottlieb*, 229 Md. 188, 182 A.2d 489, 493 (1962); *see also Sinclair v. Sullivan Chevrolet Co.*, 31 Ill.2d 507, 202 N.E.2d 516, 518–19 (1964). The record does contain some evidence showing that the Board of Directors knew of the oral agreement at the time when it was made. For example, Ralph H. Brumbach, who was the president of Citizens at the time of the transaction, testified that Rogers discussed the repurchase provision with the Board of Directors in December, 1980, before the transaction was closed. However, the record is unclear as to whether the Board intended to comply with the agreement at the time the transaction was entered into. The evidence shows that the Board was concerned that Citizens might not be able to repurchase the buildings since there was no provision to that effect in the documents. The Board, like Seale, was reassured by Rogers' statements that he would "handle" the situation and that it would be "taken care of." Alternatively, fraud could be found if Rogers represented that Citizens had agreed to repurchase the property and Citizens had not decided to do so. Because the parties erroneously fo-

cused on Rogers' intent, neither of these possible bases for finding fraud were submitted to the jury. Since there is some evidence to support them, the action is remanded for a new trial.

## II.

We address next the issues raised by Seale in his cross-appeal.

### A. Attorneys' Fees and Punitive Damages

In view of our decision to remand for a new trial, we do not address Seale's contention that the District Court erred in refusing to instruct the jury on the awarding of attorneys' fees and punitive damages under Ohio law.

### B. Directed Verdict in Favor of Directors

The second error alleged in Seale's cross-appeal is the District Court's decision to grant the motions for a directed verdict in favor of the defendant directors. Seale argues that the directors should be liable on one of two theories. First, he argues that even if the directors were truthful in asserting that they had no knowledge of the repurchase agreement, they are liable to him for the actions of their co-directors, Rogers and Brumbach. Seale cites section 1701.93(A) of the Ohio Revised Code, which prohibits any officer, director, employee, or agent of a corporation from making any statements "respecting the shares, assets, liabilities, capital, business, dividends or distributions, earnings, or accounts of a corporation" with the intent to deceive and knowing such statements to be false. Subsection (B) provides that: "Whoever violates this section shall be personally liable, jointly and severally, with all other persons participating with them in any such act, to any person for any damage actually suffered and proximately resulting from such act." Ohio Rev.Code Ann. § 1701.93 (Anderson 1985).

Seale's second theory of liability is that directors are jointly and severally liable for the fraud of a co-director if the other directors participated in the tort, citing *Stony Ridge Hill Condominium Owners*

*Ass'n v. Auerback*, 64 Ohio App.2d 40, 410 N.E.2d 782, 789 (1979). Seale argues that the directors' behavior here indicated that they participated in a "cover-up" of Citizens' obligations under the agreement made by Rogers and so they should be jointly and severally liable.

We need not consider whether Seale's interpretations of the applicable law are correct, since we find no evidence of the required "participation" by the directors. Seale himself testified that he relied solely on Rogers' representations in entering into the transaction and that he had no conversations with any of the other directors regarding the transaction. Thus, the directors could not have made any fraudulent misrepresentations which would have induced Seale into buying the buildings. "The cases are agreed that a director or officer of a corporation is not liable, merely because of his official character, for the fraud or false representations of the other officers or agents of the corporation ..., if such director or officer is not personally connected with the wrong and does not participate in it." 18B Am.Jur.2d *Corporations* § 1882 (1985). Moreover, even if the directors did deliberately breach an enforceable contract, they have no personal liability. Directors are not personally liable on a corporation's contracts unless they purport to bind themselves individually. 12 O.Jur.3d *Business Relationships* § 461 (1979 & Supp.1986).

Thus, we affirm the District Court's decision to direct a verdict in favor of the individual directors.

## III.

Accordingly, the judgment of the District Court is affirmed in part and reversed in part and the case is remanded for proceedings consistent with this opinion.