Michael HAZIME, Plaintiff,

v.

MARTIN OIL OF INDIANA,
INC., Defendant.

No. 91–75727.

United States District Court,
E.D. Michigan, S.D.

June 16, 1992.

John S. Regan, Detroit, Mich., for plaintiff.

David Paruch, Detroit, Mich., for defendant.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I.

This is a breach of contract case. Plaintiff, Michael Hazime (Hazime), says defendant, Martin Oil of Indiana, Inc. (Martin Oil), breached a contractual obligation to sell real property improved with a gasoline station (the station) for $250,000.00. Hazime requests the Court to order the specific performance of his contract. On October 30, 1991, Martin Oil removed the case from the Wayne County Circuit Court, pursuant to 28 U.S.C. § 1441(a). On November 4, 1991, Martin Oil filed a counter-complaint alleging that Hazime breached the terms of an oral lease regarding the station. Now before the Court is Martin Oil's motion for summary judgment as to Hazime's specific performance claim. Martin Oil says the alleged contract between it and Hazime is voided by Michigan's statutes of frauds, M.C.L.A. §§ 566.108 [1], 566.106 [2], which

---

1. M.C.L.A. § 566.108 states in relevant part:
   Every contract for the leasing of a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing:

   .    .    .    .    .

2. M.C.L.A. § 566.106 states, in relevant part:
   No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any

state that any contract for the sale of land must be reduced to writing. The Court agrees. For the reasons which follow, the Court will grant Martin Oil's motion.

## II.

The following facts, as gleaned from Hazime's affidavit and other documents in the record, are not in material dispute. At all relevant times prior to December 11, 1990, Martin Oil held a mortgage on the station at issue. The mortgagor, Ahmed Hazime, failed to timely meet his obligations under the promissory note for which the mortgage was given as security. As a result, a judgment of foreclosure was entered on August 3, 1990. Under the terms of the judgment of foreclosure, Ahmed Hazime was given six months to redeem by paying the full amount owed to Martin Oil. Ahmed Hazime did not exercise his right of redemption. On December 11, 1990, Martin Oil acquired ownership of the station at a judicial foreclosure sale, which was followed by a six-month statutory redemption period. *See* M.C.L.A. § 600.3140.[3]

One day before the expiration of the six-month statutory redemption period, on June 10, 1990, Ahmed Hazime delivered to Hazime a quit claim deed covering the station. On or before June 11, 1991, Hazime contacted Martin Oil to discuss the possibility of purchasing the station either by redemption for $193,000.00 or after the six-

month statutory redemption period. Martin Oil and Hazime entered into an oral agreement in which Hazime was to purchase the station for $250.000.00 after the six-month statutory redemption period (the agreement). It was also orally agreed that until the purchase, Hazime would remain in possession of the station as the on-sight operator at a rental rate of $100.00 per day. Hazime did not make any payments under the lease. The agreement was not reduced to writing.

## III.

■ Hazime acknowledges that ordinarily the statute of frauds would void the agreement, because it was not reduced to writing.

### A.

However, Hazime says that under the circumstances of this case, the doctrine of promissory estoppel effectively renders the agreement enforceable notwithstanding the statute of frauds. In particular, Hazime says: (1) Martin Oil promised to sell the station to him for $250,000.00, (2) he reasonably relied on the promise and as a result did not redeem the station within the six-month statutory period, and (3) therefore he lost the right to redeem. The argument lacks merit.[4]

---

trust or power over or concerning lands, or in any matter relating thereto, shall be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

3. M.C.L.A. § 600.3140 states in relevant part:

The mortgagor, his heirs, executors, administrators, or any person lawfully claiming from or under him or them may redeem the entire premises sold by paying, within 6 months from the time of the [foreclosure] sale, to the purchaser, his executors, administrators, or assigns, or to the register of deeds in whose office the deed of sale is deposited as provided in the court rules, for the benefit of the purchaser, the sum which was bid with interest

from the time of the sale at the rate percent borne by the mortgage. . . .

4. Martin Oil says that in statute of frauds cases, the doctrine of promissory estoppel ordinarily may be successfully invoked only when the plaintiff relies, not simply on an underlying promise, but also on an ancillary promise to reduce the underlying promise to writing. *See 21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement System,* 432 F.2d 64, 65 (5th Cir.1970); *Alaska Airlines v. Stephenson,* 15 Alaska 272, 217 F.2d 295, 298 (9th Cir.1954); *Tiffany, Inc. v. W.M.K. Transit Mix, Inc.,* 16 Ariz.App. 415, 493 P.2d 1220 (1972); *Sinclair v. Sullivan Chevrolet Co.,* 45 Ill.App.2d 10, 195 N.E.2d 250, *aff'd,* 31 Ill.2d 507, 202 N.E.2d 516 (1964); *Albany Peanut Co. v. Euclid Candy Co. of California,* 30 Cal.App.2d 35, 85 P.2d 471 (1938). *See also* Annotation, *Promissory Estoppel as Basis for Avoidance of Statute of Frauds,* 56 A.L.R.3d 1037, 1057 § 5 (1974 & Supp.1991); Restatement, Contracts § 178, Comment f.

A survey of Michigan cases involving doctrine of promissory estoppel reveals that there has never been a decision that addresses whether it may be applied to a statute of frauds case, like this one, involving a real estate transaction. Nevertheless, the Court is satisfied that if the Michigan Supreme Court looked at the issue today, it would rule that, under the circumstances of this case, the doctrine of promissory estoppel may not be applied to a statute of frauds case involving the sale of real estate. *See Orfield v. International Harvester Co.*, 535 F.2d 959, 965 (6th Cir.1976) (in diversity cases, federal court must make educated guess what state Supreme Court would decide if question was present to it).

It is true that Michigan Court of Appeals has adopted the doctrine of promissory estoppel as a means of avoiding the statute of frauds in some instances. *See Nygard v. Nygard*, 156 Mich.App. 94, 99, 401 N.W.2d 323 (1986) (if statute of frauds prevents enforcement of child support contract, defendant may be held liable under the doctrine of promissory estoppel); *Pursell v. Wolverine–Pentronix, Inc.*, 44 Mich. App. 416, 419, 205 N.W.2d 504 (1973) (promissory estoppel doctrine may overcome defense of the statute of frauds to an action to seek enforcement of an oral contract of employment); *Clark v. Coats & Suits Unlimited*, 135 Mich.App. 87, 98, 352 N.W.2d 349 (1984) (same).

However, these decisions are not persuasive authority for the proposition that the Supreme Court of Michigan would treat employment and other types of personal contracts and contracts for real estate transactions the same way. In *Seale v. Citizens Savings & Loans Association*, 806 F.2d 99, 104 (6th Cir.1986) (applying Ohio law), the Court of Appeals for the

Sixth Circuit stated that real estate contracts are generally regarded as more deserving of protection than employment contracts and as a result, in the absence of any case law to the contrary, refused to apply the doctrine of promissory estoppel to abrogate the clear and explicit intent of an applicable statute of frauds requiring a writing in a real estate transaction. In so holding, the Court of Appeals stated:

Real estate transactions are usually formal undertakings involving significant sums of money. Because they have the potential to affect the actions and interests of third parties, these transactions need to be made public. The statute of fraud is thus necessary "to ensure that transactions involving a transfer of realty interests are commemorated with sufficient solemnity. A signed writing provides greater assurance that the parties and the public can reliably know when such a transactions occurs. It supports the public policy favoring clarity in determining real estate interests and discourages indefinite or fraudulent claims about such interests." *North Coast Cookies, Inc. v. Sweet Temptations, Inc.*, 16 Ohio App.3d 342, 348, 476 N.E.2d 388 (1984).

*Seale*, 806 F.2d at 104. *Seale* amply illustrates the important policy considerations underlying the statute of frauds in the real estate context. Thus, in light of the policy considerations, and in the absence of a strong indication of its position, there is no reason to believe that the Michigan Supreme Court would, if it addressed the issue, hold that, under the circumstances of this case, the doctrine of promissory estoppel applies to a contract for the sale of real estate.

Here, Hazime is not proceeding under the theory that Martin Oil breached an ancillary promise to reduce an underlying promise to writing. However, there is a contrary line of authority holding that the doctrine of promissory estoppel may be applied in a statute of fraud case even in the absence of an ancillary promise to reduce the underlying promise to writing. *See Monarco v. Lo Greco*, 35 Cal.2d 621, 220 P.2d 737 (1950), *California Natural, Inc. v. Nestle Holdings, Inc.*, 631 F.Supp. 465 (D.N.J.1986); *Young v. Simpson*, 607 F.Supp. 67 (E.D.Tex.1985); *See*

*also* Annotation, *Promissory Estoppel as Basis for Avoidance of Statute of Frauds*, 56 A.L.R.3d 1037, 1060 § 6 (1974 & Supp.1991). In light of the Court's holding, *infra*, namely that, under the circumstances of this case, the doctrine of promissory estoppel may not be applied to a statute of frauds case involving real property, it need not determine the more general issue of whether the application of the doctrine of promissory estoppel in a statute of fraud case is contingent on an ancillary promise to reduce the underlying promise to writing.

**1070**

### B.

Hazime also says the equitable doctrine of partial performance allows him to overcome Martin Oil's defense of the statute of frauds. The argument lacks merit. Partial performance of an oral contract to convey an interest in land may remove the contract from the operation of the statute of frauds. *Zaborski v. Kutyla,* 29 Mich.App. 604, 185 N.W.2d 586 (1971). However, in arguing that he partially performed a contract to purchase the station, Hazime relies on his having paid approximately $1,000.00 in fees to and corresponded with the Michigan Department of Natural Resources (DNR) in connection with environmental contamination at the station. Hazime has failed to cite a single case suggesting that these limited acts or analogous acts, standing alone, constitute partial performance entitling him to specific performance of a contract for the sale of real estate allegedly worth $250,000.00. *See* 73 Am.Jur.2d *Statute of Frauds* § 405 (1974) (plaintiff not entitled to relief under the equitable doctrine of partial performance unless such performance is "substantial" and "important"). Moreover, a plaintiff may invoke the doctrine of partial performance only if his or her acts "would not have been done except for the contract," that is they were solely referable to the contract. *Id.* at § 406 (citations omitted). Here, there is no probative evidence that Hazime corresponded with the DNR because of the contract. Lastly, there is no evidence that Hazime acted in reliance upon the performance of the contract by defendant. *Mahon v. Sahration,* 310 Mich. 563, 568, 17 N.W.2d 753 (1945) (reliance on contract is a requisite for application of doctrine of partial performance). Here, it appears that Hazime corresponded with the DNR *after*

Martin Oil informed him that it had no intention of selling the station to him for $250,000.00, and thus any assertion of reliance is specious.[5]

### C.

In sum, the statute of frauds voids an oral contract between Hazime and Martin Oil to sell the station. Under the circumstances of this case, neither the doctrine of promissory estoppel nor the doctrine of partial performance may be applied to overcome the statute of frauds defense. Thus, Martin Oil's motion for summary judgment as to Hazime's claim for specific performance is GRANTED and the complaint is DISMISSED.[6]

SO ORDERED.

---

5. In arguing that he partially performed a contract to purchase the station, Hazime also says he refrained from redeeming the station, and thereby incurred a net loss of approximately $50,000.00, that is the difference between the redemption price and the contract's $250,000.00 purchase price. The argument lacks merit. Save a conclusory statement in his affidavit, there is no evidence that Hazime failed to redeem the station solely because of the contract. In fact, Hazime has admitted that he did not redeem the property because of his concern that, if he had done so, then state tax liens would have been imposed on him. In any event, Hazime has not cited a single case holding that, under Michigan law, the mere refraining from taking certain action, in contrast to performing affirmative acts, may constitute partial performance of an oral contract.

6. Martin Oil's counter-complaint is still pending before the Court.