**INDUSTRIAL MAXIFREIGHT SERVICES, LLC, a Michigan limited liability company, Plaintiff,**

v.

**TENNECO AUTOMOTIVE OPERATING COMPANY, INC., aka, Walker Manufacturing Company, a Delaware corporation, Defendant.**

No. 4:01–CV–30.

United States District Court,
W.D. Michigan,
Southern Division.

Jan. 28, 2002.

Roy Brandes, Roy Brandes, PC, Hillsdale, MI, Hillsdale, James R. Durant, J.R. Durant & Associates, PC, Portage, MI, for plaintiff.

Dennis M. Barnes, Michael J. Reynolds, Barris, Sott, Denn & Driker, Detroit, MI, for defendant.

## *OPINION*

ROBERT HOLMES BELL, Chief Judge.

Plaintiff Industrial MaxiFreight Services LLC's action for promissory estoppel is before the Court on Defendant Tenneco Automotive Operating Company, Inc.'s motion for summary judgment. For the reasons that follow, Defendant's motion for summary judgment will be granted.

## I.

Plaintiff Industrial MaxiFreight Services is a limited liability company located in Litchfield, Michigan. Plaintiff is owned by Kathleen Blonde. Both Kathleen Blonde and her husband, Mark Blonde, are actively involved in the activities of Plaintiff.

Defendant Tenneco Automotive Operating Company, Inc. ("Tenneco") is an Illinois corporation doing business in Litchfield, Michigan as Walker Manufacturing Company. James Collins was the materials manager of the local Tenneco plant.

In 1997 Mark Blonde sold the farm supply business that he had owned for approximately 20 years. In 1999 the Blondes decided to start a business to build and lease warehouse space. Mark Blonde investigated the need for warehouse space in several areas, including Jonesville, Litch-

field and Hillsdale, Michigan. (Blonde dep. at 15). In February 2000 Mark Blonde began speaking to potential lessees and requested quotes from a builder, Scott Brand, on several different sizes of buildings. (Blonde dep. at 17).

On February 9, 2000 and March 8, 2000, Plaintiff submitted plans for a warehouse to the Litchfield Tax Incremental Finance Authority ("TIFA"). · (Def.Exh. H & K). On March 13, 2000, Plaintiff filed for a $323,468 bank loan for a 25,000 square foot warehouse, listing Walker Manufacturing, Hilex, Essex, and Bose as potential tenants. (Def.Exh. E). On March 17, 2000, Plaintiff accepted Scott Brand's written proposal for the construction of a warehouse on Lot 14. (Def.Exh. J). Plaintiff received a warranty deed to Lot 14 of the Litchfield Industrial Park on March 22, 2000. (Def.Exh. L). Plaintiff filed an application for building permit and an application for zoning compliance permit on March 29, 2000. (Def.Exh. P & X). Plaintiff's builder, Scott Brand, filed a notice of commencement of construction on April 7, 2000. (Def.Exh. R). On April 21, 2000, Brand submitted a change order for a 20,000 square foot addition to the existing building. (Def.Exh. Z).

There is no written documentation of Plaintiff's discussions with Defendant prior to April 10, 2000. Plaintiff has presented evidence that sometime in February 2000 Jim Collins advised Mark Blonde that Tenneco would be needing additional warehouse space in Litchfield. (Blonde dep. at 19). Plaintiff has presented evidence that Collins advised that he needed at least 30,000 square feet of warehouse space by summer and perhaps as much as 60,000 square feet. (Blonde dep. at 23–24). Plaintiff has presented evidence that Collins committed to leasing all 30,000 square feet for five years before Plaintiff bought the land or appeared at the first Litchfield TIFA meeting. (Blonde dep. at 28). Finally, Plaintiff has presented evidence that in early March 2000 Collins informed Mr. Blonde that he would need an additional 20,000 square feet. (Blonde dep. at 161–62, 169, 201).

On April 10, 2000, the Blondes met with their attorney, Roy Brandes, to prepare a proposed lease. The proposed lease was presented to Defendant. (Pl.Exh. 6, Def. Exh. N). On April 19, 2000, the parties met to discuss changes proposed by Defendant. Based upon the revisions discussed at that meeting Plaintiff presented Defendant with a revised proposed lease agreement. (Def.Exh. T). Collins forwarded the proposed draft lease to Tenneco's corporate offices for review. Plaintiff continued building its warehouse. In mid-June 2000 Tenneco advised Plaintiff that it had decided against entering into the lease.

Plaintiff filed this suit in the Hillsdale County Circuit Court alleging breach of contract and seeking specific performance and damages. Defendant removed the action to federal court on the basis of diversity of citizenship. Plaintiff filed an amended complaint adding a claim for promissory estoppel.

Plaintiff sued Tenneco for specific performance, breach of contract, and promissory estoppel. This Court previously dismissed Plaintiff's claims for specific performance and breach of contract pursuant to Rule 12(b)(6) because the unwritten and unsigned proposed lease agreement at issue failed to comply with the requirements of Michigan's statute of frauds. Defendant now seeks summary judgment on the promissory estoppel claim.

## II.

Defendant Tenneco contends that the doctrine of promissory estoppel should not be used to circumvent the statute of frauds in real property cases.

The Michigan statute of frauds provides that an agreement that by its terms is not to be performed within 1 year from the making of the agreement is void unless it is in writing. M.C.L. § 566.132(1)(a). "Every contract for the leasing for a longer period than one year . . . shall be void, unless the contract, or some note or memorandum thereof be in writing." M.C.L. § 566.108. "No estate or interest in lands, other than leases for a term not exceeding one year . . . shall be created, granted, assigned, surrendered or declared" unless in writing. M.C.L. § 566.106.

■ In *Lovely v. Dierkes*, 132 Mich. App. 485, 489, 347 N.W.2d 752 (1984), a case involving an oral promise for three years employment, the Michigan Court of Appeals held that "where it would be inequitable to apply the statute of frauds," the common law claim of promissory estoppel can bar application of the statute of frauds. *Id.* at 489, 347 N.W.2d 752. The Michigan Court of Appeals has recently questioned the continued viability of *Lovely* on the basis that principles of separation of powers preclude a court from overriding the policy choices of the legislature. *Crown Technology Park v. D & N Bank, FSB*, 242 Mich.App. 538, 548 n. 4, 619 N.W.2d 66 (2000). However, the court ultimately did not decide this issue because the court was able to dismiss the action on the basis that the statute of frauds with respect to financial institutions specifically bars "an action" against a financial institution for promises that are not in writing.

This Court cannot find, based simply upon the separation of powers dictum in *Crown Technology*, that the Michigan Supreme Court is prepared to reject the well-established principle that promissory estoppel can be used, in some cases, to circumvent the application of the statute of frauds.

On the other hand, the Court is of the firm conviction that Michigan courts would apply extra caution where the doctrine of promissory estoppel is invoked to circumvent the statute of frauds in the real estate context. Judge Cohn recognized the special need for writings in real estate matters in *Hazime v. Martin Oil of Indiana, Inc.*, 792 F.Supp. 1067 (E.D.Mich.1992):

> A survey of Michigan cases involving doctrine of promissory estoppel reveals that there has never been a decision that addresses whether it may be applied to a statute of frauds case, like this one, involving a real estate transaction. Nevertheless, the Court is satisfied that if the Michigan Supreme Court looked at the issue today, it would rule that, under the circumstances of this case, the doctrine of promissory estoppel may not be applied to a statute of frauds case involving the sale of real estate.

*Id.* at 1069.

The particular need for writings in real estate matters was also recognized by the Sixth Circuit in *Seale v. Citizens Savings & Loan Ass'n*, 806 F.2d 99 (6th Cir.1986). The Sixth Circuit held that Ohio's application of equitable estoppel to avoid the statute of frauds in the employment context did not mean that the doctrine should be similarly applied in the real estate context. *Id.* at 104. The court reasoned that because real estate transactions are usually more formal, involve significant sums of money, and have the potential to affect the actions and interests of third parties, such transactions need a writing. *Id.*

In *D & S Coal Co. v. USX Corp.*, 678 F.Supp. 1318 (E.D.Tenn.1988), the court held that a lessee could not avail itself of the doctrine of promissory estoppel to circumvent the statute of frauds defense to an alleged coal lease. The court did not find a per se rule against application of promissory estoppel to circumvent the statute of frauds in real estate cases, but instead found no evidence of fraud that

needed to be remedied by promissory estoppel. *Id.* at 1322–23. The court noted that the longevity of the statute of frauds and the fact that similar statutes are found in every state, indicates that the writing requirement advances important interests, particularly in the real estate context. *Id.*

This Court declines Defendant's request for a per se ruling that promissory estoppel can never be applied to circumvent the statute of frauds in a real estate case. However, as demonstrated in the analysis below, the historical importance attached to writings in real estate cases is not irrelevant to this Court's analysis of Plaintiff's promissory estoppel claim.

### III.

Defendant contends that even if the statute of frauds does not bar promissory estoppel, there is no genuine issue of material fact regarding any element of Plaintiff's promissory estoppel claim.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If Defendant carries its burden of showing there is an absence of evidence to support a claim then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"On summary judgment, all reasonable inferences drawn from the evidence must be viewed in the light most favorable to the parties opposing the motion." *Hano-*

*ver Ins. Co. v. American Engineering Co.*, 33 F.3d 727, 730 (6th Cir.1994) (citing *Matsushita,* 475 U.S. at 586–88, 106 S.Ct. 1348). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id. See generally, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476–80 (6th Cir.1989).

### IV.

Promissory estoppel is an equitable remedy that is "employed to alleviate an injustice resulting from strict adherence to established legal principles, such as those underlying the statute of frauds." *Crest the Uniform Co. v. Foley,* 806 F.Supp. 164, 169 (E.D.Mich.1992). Promissory estoppel is based on the idea that a particular promise must be enforced if injustice is to be avoided. *ECCO Ltd. v. Balimoy Mfg. Co.,* 179 Mich.App. 748, 750, 446 N.W.2d 546, 548 (1989). The elements of a promissory estoppel claim are:

> (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided.

*Novak v. Nationwide Mutual Ins. Co.,* 235 Mich.App. 675, 686–687, 599 N.W.2d 546 (1999). *See also Nygard v. Nygard,* 156 Mich.App. 94, 100, 401 N.W.2d 323 (1986).

"The doctrine of promissory estoppel is cautiously applied." *Marrero v. McDonnell Douglas Capital Corp.,* 200 Mich.App. 438, 442, 505 N.W.2d 275, 278 (1993) (citing *State Bank of Standish v. Curry,* 190

Mich.App. 616, 621, 476 N.W.2d 635 (1991), *reversed in part on other grounds,* 442 Mich. 76, 500 N.W.2d 104 (1993)). A court must "exercise caution in evaluating an estoppel claim and should apply the doctrine only where the facts are unquestionable and the wrong to be prevented undoubted." *Novak v. Nationwide Mut. Ins. Co.,* 235 Mich.App. 675, 687, 599 N.W.2d 546, 552 (citing *Marrero,* 200 Mich.App. at 442–43, 505 N.W.2d 275).

■ The first element of a promissory estoppel claim is a promise. "Promissory estoppel requires an actual, clear and definite promise." *First Security Savings Bank v. Aitken,* 226 Mich.App. 291, 312, 573 N.W.2d 307 (1997) (citing *Charter Twp. of Ypsilanti v. General Motors Corp.,* 201 Mich.App. 128, 134, 506 N.W.2d 556 (1993)). According to one court, a promise that is definite and clear is the "sine qua non" of promissory estoppel. *Marrero,* 200 Mich.App. at 442, 505 N.W.2d 275.

Defendant contends there is no evidence that Tenneco made an actual, clear, and definite promise to lease warehouse space from Plaintiff. No lease was ever signed by either party, and Defendant has presented evidence that the proposed lease agreement of April 19, 2000, specifically states that it is for 30,000 square feet, not for 50,000 square feet, even though Plaintiff alleges there was an agreement for a 50,000 square foot building as early as February or March 2000. Defendant has presented unrebutted evidenced that the parties were aware that Tenneco might require a lease term of three years instead of five years. (Blonde dep. at 42). Finally, Defendant has presented evidence that several different price terms were discussed. Defendant contends there was no definite promise regarding these essential terms. Defendant has also presented evidence that any promise was conditional because Defendant informed Plaintiff that any lease would have to be approved by the corporate office.

Plaintiff has presented evidence that it had discussions with Collins as early as February and March 2000, first for a 30,000 square foot facility, and later for 50,000 square feet; that because they had already ordered the 30,000 square foot building, the proposed lease was written up for 30,000 square feet, with the understanding that there would be an amended or replacement lease when the larger building was completed. Plaintiff has presented evidence that Collins represented that he would sign the lease, that he was satisfied with the terms of the proposed lease for 30,000 square feet for 60 months at $12,000 per month, and that he would have signed the lease if corporate had agreed. (Collins dep. at 23–24). Plaintiff has also presented evidence that Defendant represented that the approval from the corporate office was in the nature of a rubber stamp.

The second element of a promissory estoppel claim is that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee. Defendant contends there is no evidence that Tenneco made promises to Plaintiff which it reasonably expected would induce Plaintiff to build the warehouse. Plaintiff has presented evidence that Defendant was aware that Plaintiff was proceeding to build the warehouse in accordance with Defendant's specifications.

Based upon the lack of certainty as to the number of square feet, the length of the lease and the articulated need for corporate approval, this Court is highly skeptical as to whether Plaintiff's evidence is sufficient to create a genuine issue of fact on the first two elements of its promissory estoppel claim. However, this Court need not make a definitive ruling on these first

two elements because it is clear that Plaintiff cannot succeed on the third element of its claim.

■ The third element of a promissory estoppel claim is that the promise in fact produced reliance in circumstances such that the promise must be enforced if injustice is to be avoided. Plaintiff has not met this element of its promissory estoppel claim. There are no special circumstances that require relief from the statute of frauds in this case.

Although Plaintiff has presented evidence that it relied on Defendant's promises, there is no basis for finding that Plaintiff's reliance was reasonable or that the promise must be enforced to avoid injustice. Plaintiff contends that Collins made repeated assurances that he had authority to sign the lease and that he would sign it. The evidence is unrebutted, however, that Defendant told Plaintiff on more than one occasion that the lease would have to be approved by the corporate office. (Blonde dep. at 31, 43; Plaintiff's Answers to Interrogatories, Def.Exh. G. at # 88; Brandes dep. at 17–18).

Defendant has presented unrebutted evidence that prior to the initial lease discussions on April 10, 2000, Plaintiff had developed plans for a warehouse, contacted a contractor, presented its plan to the Litchfield Tax Increment Finance Authority, applied for a loan to build the warehouse listing Tenneco and others as potential tenants, bought the property, signed a contract with the builder for construction, ordered building materials, obtained a building permit, and filed a notice of commencement of construction.

There is no question of fact that Plaintiff knew a writing was required to protect its interests. Although this was Plaintiff's first experience in building and leasing warehouses, Plaintiff was not unsophisticated in business matters. Mark Blonde had been in the farm equipment business for many years. The Blondes were familiar with the need for written contracts. All aspects of the construction of the warehouse had involved written contracts, including the purchase of the property, the building contract, and the bank loan. Plaintiff was also represented by counsel during the lease negotiations.

■ As noted previously, Michigan courts apply the doctrine of promissory estoppel cautiously, and only where the facts are unquestionable and the wrong to be prevented undoubted. *Marrero*, 200 Mich.App. at 442–43, 505 N.W.2d 275. If the doctrine of promissory estoppel is to be applied to circumvent the statute of frauds, it should be applied only to avoid the perpetration of a fraud. *D & S Coal*, 678 F.Supp. at 1323 (citing 73 Am.Jur.2d, Statute of Frauds § 562 (1974); see also *Anno., Promissory Estoppel as Basis for Avoidance of Statute of Frauds*, 56 A.L.R.3rd 1037 (1974)).

Enforcing the alleged promise to enter into a lease is not necessary to avoid injustice in this case. It is not unjust to require Plaintiff to comply with the statute of frauds. Plaintiff is a business, operated by two long-time business owners, represented by counsel in lease discussions with unrepresented local plant personnel regarding a warehouse Plaintiff was already building. Plaintiff could have reduced any alleged lease agreement to an enforceable writing in compliance with the statute of frauds. Nothing prevented Plaintiff from requiring a lease or letter of intent prior to proceeding with construction of the warehouse. Moreover, Tenneco retained no tangible benefit by not leasing from Plaintiff. It appears that the Blondes made an optimistic, but ultimately unsound decision to proceed with the construction of the warehouse before they had a firm, written commitment from Defendant. They were not unfairly misled by Defendant.

This case is a prime example of why the statute of frauds is of such importance in real estate matters. A considerable sum of money is involved. Unique property is involved. Significant details concerning the lease relationship are involved. Non-enforcement of the statute of frauds under the circumstances of this case would render the statute of frauds meaningless.

Because Plaintiff has not presented facts from which it can reasonably be found that Defendant made promises that in fact produced Plaintiff's reliance in circumstances such that the promise must be enforced if injustice is to be avoided, Plaintiff's claim for promissory estoppel fails as a matter of law. Summary judgment will accordingly be entered in favor of Defendant Tenneco.

An order consistent with the opinion will be entered.